George W. Kohout, Plaintiff-Appellee, v. Civil Service Commission of the City of Chicago, William A. Lee, President, Albert W. Williams and John J. Ahern, Members of the Civil Service Commission of the City of Chicago, and George L. Ramsey, Commissioner of Buildings of the City of Chicago, Defendants-Appellants.

Gen. No. 47,770.

First District, First Division.

December 29, 1960.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Rita Ivy Epstein, Assistant Corporation Counsel, of counsel) for appellants.

Michael F. Ryan, of Chicago (Richard F. McPartlin, Jr., of counsel) for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This appeal is from the trial court's reversal of the Civil Service Commission's order discharging a City employee. The sole question is whether the findings of the Commission were against the manifest weight of the evidence.

George W. Kohout is a building inspector in the classified service of the department of buildings of the City of Chicago. On March 2nd, 1956, the Commissioner of Buildings filed charges with the Civil Service Commission, specifying that Kohout was guilty of conduct unbecoming an employee. The first charges were that on October 28th, 1955, Kohout informed Stasys Cizikas, the owner of the premises at 4606 South Albany Avenue, that he must submit an architect's plan and obtain a building permit before proceeding with repair work, when he knew that neither an architect's plan or a building permit was required; that Kohout told Cizikas that he could proceed with the repairs without a plan or permit if he would pay him $100.00. The second charge is that on November 1st, 1955, he stopped the owner from proceeding with floor repairs until a permit was obtained when he knew that a permit was not necessary. Kohout was notified of the charges and was represented by counsel during the hearings before the Commission. Afterwards Kohout was ordered discharged from his position by the Commission.

In a proceeding filed by Kohout under the provisions of the Administrative Review Act, Ill. Rev. Stat. 1959, Ch. 110, §§ 264–279, the trial court found that the decision and findings of the Commission were contrary to the manifest weight of the evidence and reversed the Commission. It therefore becomes necessary to review the record of proceedings to determine whether the findings of the Commission were against the manifest weight of the evidence.

Stasys Cizikas and his brother, Balys, reside in the building they own at 4606 South Albany Avenue. The

second floor had two apartments and they were in the process of converting them into one. They testified that Kohout inspected the premises on October 28th, 1955, at which time they were repairing the floor. Kohout spoke to them in Bohemian and they answered in Polish and Bohemian because they didn't speak English. Kohout said he was there to inspect the premises in response to an anonymous letter received by his department. Stasys told Kohout that they wanted to convert the two apartments into one and to accomplish this he wanted to open the door between the apartments, eliminate one bathroom and remove the partition around it, and remove one sink. Kohout told them they would need architectural plans and a permit to do the work. Both Cizikas brothers argued that they would do the work themselves and that they didn't need to employ an architect or obtain a permit. In answer to their question, Kohout said an architect's plan would cost $300.00 and a permit would cost $75.00. Stasys then said he asked if there was any way to avoid using plans, and Kohout wanted to know whether he or his brother would do the talking. When his brother left the room, Kohout said, "If you give me $100.00 you can do all the work you want." Stasys offered $50.00 which he said was refused by Kohout.

Kohout's version of the incident differs in some respects. He testified the incident occurred on November 1st, 1955, and not on October 28th, and that he understood Stasys to say he wanted to remove the plumbing from one kitchen and bathroom and remove partitions in order to make one apartment out of two and this work, he told Stasys would require architectural plans and a permit. Kohout said Stasys couldn't understand why he would need a plan and a permit, and when Stasys asked him where he could get an architect he told him that it wasn't his practice to make recommendations. In response to Stasys' question

390

as to the architect's cost Kohout told him the fees vary and that it might cost $100.00, and that Stasys pulled out his wallet and asked if he could take care of him but he refused. Kohout then made out a report on November 1st, stating he had made an inspection and that the owner was being notified to obtain architect's plans and a permit for converting two apartments into one. Kohout said at the trial that there has been a fundamental ruling that where there is a change of use it normally requires architect's plans. Kohout denied telling Stasys that if he gave him $100.00 he could do all the work he wanted to without a plan or permit.

On November 5th, Stasys saw Kohout at the Back of the Yards Council office. Kohout went there in response to a call from Mr. Meegan, executive secretary of the council. Stasys testified that Mr. Kezon of the Supreme Savings & Loan Association asked Kohout why he wanted $100.00 from Stasys. Kohout said Kezon wanted to know why he was "giving his people trouble" and he assured Kezon he was not doing that, but that he made an inspection because of a complaint of an alleged conversion. Kezon then told him he had nothing to worry about because there was no conversion. On cross-examination Kohout testified that Kezon said he "was trying to shake down his client."

The building department produced from its files a notice of an alleged illegal conversion on the second floor of the premises in question, which was dated October 26th, 1955; an anonymous letter dated October 26th, 1955, alleging illegal conversion on the premises which had a notation on it, signed by Kohout, dated November 1, 1955, that the owner was notified; a notice signed by Kohout dated November 1, 1955, requesting that the owner submit architect's plans and to obtain a permit to convert two apartments into one; and a letter to the owner that noncompliance will

391

result in prosecution. A daily inspection report of Kohout's did not list an inspection by him of these premises on October 28, 1955, but shows he made an inspection on November 1, 1955.

The chief plan examiner of the Building Department testified that when deconversion involves "a pretty good sized apartment" they issue permits. He stated that deconversions are not really defined in the Code. If the deconversion did not involve the replacement or repair of any structural load-bearing members or reduce the means of exit or sanitary facilities or involve the use of materials not permitted by the building provisions of the City Code or increase the height or capacity of the building, a permit, he said, would not be necessary. Also, if the change was the moving of a partition which did not involve a load-bearing partition or light and ventilation in the rooms, a permit and architectural plans would not be necessary.

George L. Ramsey, Commissioner of Buildings for the City of Chicago, and a licensed architect since 1914, testified that he examined the premises in question in January, 1956. He found that the second floor apartment had previously had a bathroom installed adjacent to the existing bathroom. He said the partition around the bathroom was substandard because it was made of plasterboard. He also testified that the work of removing the temporary partition, and the sink from the dining room and putting it in the kitchen, and removal of the old bathroom would not require a permit or architect's plans. His opinion was based on Section 43-2 of the Building Code, Mun. Code of Chgo., § 43-2, which provides:

> "A permit shall not be required for any minor repairs, as may be necessary to maintain existing parts of buildings, but such work or operations shall not involve the replacement or repair of any structural load-bearing members, nor reduce the

392

means of exit, affect the light or ventilation, room size requirements, sanitary or fire-resistive requirements, use of materials not permitted by the building provisions of this code, nor increase the height, area, or capacity of the building."

He testified that the partition he saw was not a load-bearing partition and its removal would help the light and ventilation. In his opinion the owner could very easily reconvert the flat himself because the repairs were minor, and the request by Kohout for plans and permit was not warranted.

With respect to the second charge, Stasys testified Kohout came to the premises on November 1st, 1955, while he was still repairing the floor and informed him that he had done some work although ordered not to, and that Kohout threatened to call the police. Kohout did not deny that he ordered the work stopped.

Under the Administrative Review Act, findings and conclusions of an administrative agency on questions of fact are "prima facie true and correct." Ill. Rev. Stat. 1959, Ch. 110, § 274. "The provisions of the act as to the scope of judicial review have been construed to mean that the courts are not authorized to reweigh the evidence or to make an independent determination of the facts." Parker v. Dept. of Registration, 5 Ill. 2d 288, 294, 125 N.E.2d 494.

Plaintiff contends that our Supreme Court, in Drezner v. Civil Service Commission, 398 Ill. 219, 75 N.E.2d 303, has required that the evidence be "clear and convincing" when conduct constituting a crime is charged, and that this constitutes a more demanding standard for reviewing evidence than does the manifest weight rule. While the Drezner case contains this language, that court restates the manifest weight standards and specifically bases its reversal on the grounds that the Commission order there "is against the manifest weight of the evidence, is not supported by

substantial evidence in the record, nor do the findings conform to the evidence in the cause."

In the instant case, Kohout ordered Stasys Cizikas to stop making repairs until he presented plans to be approved by his department. The statement by Ramsey, his superior, made after he personally inspected the premises, was that the minor repairs did not warrant architectural plans. The testimony of Stasys was of a positive nature and was substantially corroborated by his brother. Here Stasys testified Kohout wanted a $100.00 bribe, which charge Kohout denied and countered that Stasys offered him money, which he refused, after he informed Stasys that the cost of an architect would be about $100.00.

It is only where the agency decision is without substantial foundation in the record or is manifestly against the weight of the evidence that it will be set aside, and it will not be disturbed merely because the evidence is conflicting. The Commission saw and heard the witnesses. They are in a better position than either this court or the trial court to evaluate the testimony. The purpose of the Commission hearings is to enable it to resolve conflicting evidence and from it determine where the truth lies. Adamek v. Civil Service Commission, 17 Ill. App. 2d 11, 149 N.E.2d 466; McCaffery v. Civil Service Board of Chicago Park Dist., 7 Ill. App. 2d 164, 129 N.E.2d 257. We believe that the evidence supports their findings.

For the reasons stated above, the decision of the Circuit Court is reversed.

Reversed.

KILEY, P. J. and MURPHY, J., concur.