IN RE APPEAL OF CHRIS LEVOS.
CHRIS LEVOS, APPELLANT, v. COLUMBUS CIVIL SERVICE COMMISSION, APPELLEE.
335 N.W.2d 262

Filed June 3, 1983. No. 82-159.

Richard L. Kuhlman, for appellant.

Noyes W. Rogers of Leininger, Grant & Rogers, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

SHANAHAN, J.

This matter involves an appeal from action taken by a civil service commission. The District Court for Platte County, Nebraska, upheld the disciplinary action ordered by the civil service commission for the city of Columbus, Nebraska.

Chris Levos, who had 15 years' experience in the Columbus Police Department, was promoted to captain on June 1, 1980, but with a 6-month term of probation regarding such captaincy.

At approximately 1:30 a.m. on October 17, 1980, police had been summoned to a commotion in downtown Columbus. After the crowd dispersed uneventfully, Roger Cooley, a Columbus police officer in "plain clothes," also started to leave the scene. Present at this time were another policeman, Officer Donald Miller, and two civilians, Jeff Adkisson and Kenny Grape. Adkisson and Grape had been passing by in Grape's car and were attracted by the gathering. The trio of Miller, Adkisson, and Grape observed Bryan J. Timms walk to Cooley's station wagon and slam the door on Cooley's legs as the officer attempted to enter his vehicle.

As Timms began to walk away, Cooley ran after him and tackled Timms from behind. Timms and Cooley fell struggling to the pavement. As Miller went to assist Cooley, another officer, Jimmy Peters, arrived. Cooley was then kneeling on Timms' back, and Miller helped apply handcuffs so that Timms' hands were secured behind his back. At this point Levos arrived. Timms in handcuffs

was to be taken to the police station in Miller's cruiser. Cooley and Levos brought Timms, still shackled, to the passenger's side of the cruiser within view of Peters, Adkisson, and Grape.

As Cooley and Levos were attempting to put Timms into the cruiser, Timms resisted but to no great degree. Levos thereupon grabbed Timms' hair and "banged his head" three times on the top of the cruiser. Timms was then shoved into the cruiser, and, while Timms was lying in the front seat of the cruiser, Levos struck him. According to Levos, what the others had observed to be Levos' striking Timms was in fact an attempt to fasten Timms' seat belt for transportation to the police station. Miller drove Timms to the police station, and the other officers followed in their vehicles.

The police station is in the Hall of Justice where offices of the Platte County sheriff are also located. When Miller's cruiser arrived at the Hall of Justice, it was met by Levos, Trooper Robert Meyer and the jailer, Deputy Kim Wolfe of the sheriff's department, who assisted in removing Timms from Miller's cruiser. Timms still had his hands secured behind his back. Upon entering the Hall of Justice, Timms was taken by Levos and Meyer to the "booking room." As these three were walking to the booking room, Timms spit at Levos. Meyer testified that Levos then doubled his fist and swung at Timms two or three times. Meyer also heard the sound of "flesh on flesh contact" in the course of this fracas. Levos testified that he did not strike Timms but did "push his head down" so that Timms could not spit at Levos while they walked down the hallway.

In the booking room Wolfe and Meyer inventoried Timms' personal effects. Timms was seated in a chair, while Wolfe and Meyer were unlacing the "combat" or military boots worn by Timms. Levos was standing nearby at a filing cabinet and was smoking a cigarette. Both Meyer and Wolfe testi-

fied there was no struggle involving Timms and the situation was "under control." That description was verified by two deputies of the sheriff's department, Gilbert Maschmeier and Kenneth Kildare. In this setting Miller entered the room where Timms was seated with handcuffs still securing his hands behind his back. Although there was no request for assistance, Miller with both his hands pushed Timms' head down on a table located in front of Timms' chair. Maschmeier and Kildare testified that this maneuver was done in such a manner that Timms' neck was forced against the edge of the table and cut off the air supply of Timms, who was "gasping for air."

When Maschmeier asked Miller, "Why don't you let him up?" Levos finally stepped forward and told Miller to "let him up." Miller released Timms who then slipped from the chair to the floor. Kildare unlocked the handcuffs from Timms, and, when Deputy Kildare saw visible signs of injury to Timms, including a swollen nose and fresh blood around the nose and mouth, Kildare told Levos that Timms, as an injured and prospective prisoner, would not be accepted by the sheriff's department for incarceration without medical attention. Any question about medical attention was resolved when Timms signed a "citation" alleging that he had resisted arrest and committed an assault. Timms was then "released" and later obtained medical attention. Evidence regarding intoxication of Timms is in deep dispute, and opinions ranged from "not intoxicated" (Meyer) to "under the influence" (Levos).

Each officer involved in the incident filed a written report with his agency. A preliminary investigation of the incident included statements by three officers, namely, Meyer, Wolfe, and Peters. All written reports, including the sworn statements of the aforenamed officers, were available to Levos

before and during the hearing which Levos requested of the commission.

After written reports had been filed by the officers, Meyer requested hypnosis in order to sharpen his recollection, especially in view of some inconsistencies regarding Meyer's report and the reports filed by some of the other officers. At the hearing before the commission, counsel for Levos objected to the testimony of Meyer because Meyer had been hypnotized relative to his recollection of the incident.

Levos asks review of the following: (1) Fulfillment of procedural due process concerning the notice or accusation against him and the action taken by the commission pursuant to such notice; (2) The elements required in order that any disciplinary action be "in good faith for cause" in compliance with Neb. Rev. Stat. § 19-1808 (Reissue 1977); and (3) The correctness in receiving testimony from a witness previously hypnotized relative to the incident under examination by the commission.

Concerning a review of procedural due process required of an administrative agency or tribunal, the scope of such review is found in 73 C.J.S. *Public Administrative Bodies and Procedure* § 215 at 573 (1951): "It is the function of a court called on to review an order of an administrative agency to determine whether there has been due process of law; and this includes an inquiry into the jurisdiction of the agency, whether there was reasonable notice and an opportunity for fair hearing, and whether the finding was supported by evidence."

Levos has not challenged the jurisdiction of the commission, and so we proceed to the question regarding the notice given. The criterion for a constitutionally sufficient notice is found in *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950): "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance . . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." Here the notice delivered by the mayor and city council of Columbus referred to three sworn statements of law enforcement officers (Trooper Meyer, Deputy Wolfe, and Officer Peters) concerning the Timms incident of October 17, 1980, and recited that "there was a willful failure to properly conduct yourself as a police officer and said conduct tended to injure the public service . . . ." The notice then set out the disciplinary action to be taken against Levos and informed him of his right to a hearing before the commission in accordance with Neb. Rev. Stat. §§ 19-1801 et seq. (Reissue 1977).

In *State ex rel. Richey v. Neenah Police & F. Comm.*, 48 Wis. 2d 575, 180 N.W.2d 743 (1970), a city sought to terminate the employment of a police officer on account of conduct "unbecoming a police officer." The officer protested that the complaint lacked sufficient specificity, but the Wisconsin court held: "It is true that the details of the conduct are not set forth. However, it has often been stated that charges in such proceedings need not be technically drawn nor meet the requirements of a criminal indictment. . . ." *Id.* at 582, 180 N.W.2d at 747. Further, in *State ex rel. Messner v. Milw. C. Civil S. Comm.*, 56 Wis. 2d 438, 444, 202 N.W.2d 13, 18 (1972), there is the statement: "The United States Supreme Court in *Cafeteria Workers v. McElroy* (1961), 367 U.S. 886, 895, 81 Sup. Ct. 1743, 6 L. Ed. 2d 1230, stated, 'The very nature of due process negates

any concept of inflexible procedures universally applicable to every imaginable situation.'

''The degree of procedural rigor required in a proceeding varies from one case to another and depends upon the particular facts and upon the weight to be afforded to private interests as contrasted to governmental interests in the circumstances. . . . These general observations are applicable to the notice requirements of due process which 'will vary with circumstances and conditions.' The notice requirement of due process cannot be defined with any 'rigid formula.' ''

The city notified Levos of dissatisfaction with the manner in which the Timms incident had been handled. Such dissatisfaction was based on Levos' direct and personal participation and on his failure to act properly in the Timms incident as reflected by the reports of officers, namely, the affidavits incorporated by reference into the notice sent to Levos. Those affidavits provide a detailed description of Levos' involvement, and, therefore, the notice informed Levos of the accusation against him. The proposed disciplinary action and a hearing before the commission are clearly stated in the notice. Consequently, in addition to the accusation, Levos was informed of the forum in which he could present evidence bearing upon such accusation. Although questions about notice and procedural due process usually relate to the sufficiency of notice, the abundance of information in the notice given Levos does not disqualify an otherwise constitutionally adequate notice. We conclude that Levos has been accorded procedural due process with respect to the notice given to him.

Concerning appellate examination of procedural due process which is required in any hearing before an administrative agency or tribunal, Levos has misconceived and therefore misconstrued the role of a court and the standard of review in such cases.

In *Lewis v. City of Omaha*, 153 Neb. 11, 14, 43

N.W.2d 419, 421 (1950), which involved the termination of the employment of a fireman, we held: "If the order made by the council after hearing is not arbitrary or capricious, it will be sustained by the courts. . . . The fact that the evidence is very conflicting does not change the rule."

"Arbitrary and capricious action" in reference to action of an administrative agency was defined in *Indiana Civil Rights Com'n v. Sutherland Lumber*, ____ Ind. App. ____, 394 N.E.2d 949, 957 (1979): "Arbitrary and capricious action by an administrative agency is action taken, in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion."

This does not mean that a court can substitute its judgment in matters of evidence such as disputes or conflicts in the evidence and the credibility of witnesses. Rather, the reviewing court must examine the action or decision of the administrative agency or tribunal to ascertain the existence of competent evidence to support the findings and action taken. Determination of the facts and the credibility of witnesses are within the province of the administrative agency or tribunal which is in a better position to evaluate evidence offered at the hearing. 73 C.J.S. *Public Administrative Bodies and Procedure* § 216 (1951); *Williams v. Arnold Cleaners*, 25 Mich. App. 672, 181 N.W.2d 625 (1970); *Kohout v. Civil Service Commission of Chicago*, 28 Ill. App. 2d 388, 171 N.E.2d 683 (1960).

A court's review of action taken by an administrative agency or tribunal is not a trial de novo, and a court in this regard cannot reweigh evidence or make an independent determination of the facts. Neither a trial de novo nor an independent and additional determination of facts is required for procedural due process. The question to be answered by a court is whether the agency or tribunal had before it competent evidence to support its findings

and action in accordance with the appropriate law governing the subject matter within the jurisdiction of the agency or tribunal. Cf., *Harnett v. City of Omaha*, 188 Neb. 449, 197 N.W.2d 375 (1972); *Bruce v. Dept. Registration & Education*, 26 Ill. 2d 612, 187 N.E.2d 711 (1963). As expressed in *Shepherd v. City of Omaha*, 194 Neb. 813, 817, 235 N.W.2d 873, 875 (1975), " 'Competent evidence' means evidence that tends to establish the fact in issue."

The essence of procedural due process is simply that fundamental fairness which a person has the right to expect—even demand—and receive through our system of law. For this reason, in proceedings before an administrative agency or tribunal which has jurisdiction, such as the hearing before the commission in the present case, procedural due process requires the following: notice reasonably calculated to inform one of the accusation levied; identification of the accuser; factual basis for the accusation; reasonable time and opportunity to present evidence concerning the accusation; and a hearing before an impartial board. Cf., *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970); *Brouillette v. Board of Dir. of Merged Area IX, Etc.*, 519 F.2d 126 (8th Cir. 1975). Under our standard of review, once the record discloses that those elements of due process existed with respect to the findings and action of an administrative agency or tribunal, further judicial action is neither permissible nor required. The elements of due process have been satisfied in all respects relative to the hearing given Levos before the commission.

In previous cases involving the civil service act, we have held that the decisions of the civil service commission and of the District Court on appeal from such commission must be affirmed if the evidence shows that the order of the commission was made in good faith for cause. See, *Sailors v. City of Falls City*, 190 Neb. 103, 206 N.W.2d 566 (1973); *Adkins & Webster v. North Platte Civil Service Comm.*, 206

Neb. 500, 293 N.W.2d 411 (1980). It does not appear, however, that we have interpreted the language of § 19-1808, namely, "The district court shall thereupon proceed to hear and determine such appeal in a summary manner; *Provided*, that such hearing shall be confined to the determination of whether or not the judgment or order of removal, discharge, demotion, or suspension, made by the commission, was made *in good faith for cause*. No appeal to such court shall be taken except upon such ground or grounds." (Emphasis supplied.)

In *Martin v. City of St. Martinville*, 321 So. 2d 532 (La. App. 1975), the chief of police of the city of St. Martinville was dismissed from service, and on appeal from the police civil service board Martin claimed that the decision of such board was not made "in good faith for cause" as required by Louisiana statute. In arriving at the meaning of the phrase "in good faith for cause," the Louisiana court held: "In *Riley v. Board of Police Commissioners of City of Norwalk*, 147 Conn. 113, 157 A. 2d 590 (1960), for instance, the court said, 'Cause implies a reasonable ground of demotion or removal as distinguished from a frivolous or incompetent ground.' The word 'cause' also has been defined as 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' *Coursey v. Board of Fire and Police Commissioners*, 90 Ill.App.2d 31, 234 N.E.2d 339 (1st Dist. 3rd Div. 1967).

"We believe that in order for the dismissal or the disciplining of a tenured police officer to be valid, as being in good faith for cause . . . the dismissal or disciplinary action must be reasonably necessary for the continued efficiency of the service being rendered by the appointing authority. The evidence must show that the failure to dismiss or discipline the of-

ficer would be detrimental to the city or to the service which it is required to perform. The dismissal of such an officer cannot be said to have been made 'in good faith,' if the appointing authority acted arbitrarily or capriciously, or if the action taken was the result of prejudice or political expediency. His dismissal cannot be said to have been 'for cause,' if the evidence fails to show that it was necessary for the discipline and efficiency of the police department, or that it was needed to avoid some detriment to that department or to the city." *Id.* at 535.

For the purpose of § 19-1808, the phrase "in good faith for cause" shall mean a commission's action which is (1) based on competent evidence, (2) neither "arbitrary or capricious" nor the result of "political or religious reasons," and (3) reasonably necessary for effectual and beneficial public service.

As his final assignment of error Levos claims that the testimony of Trooper Meyer should have been excluded from the hearing before the commission in view of the statement in *State v. Palmer*, 210 Neb. 206, 218, 313 N.W.2d 648, 655 (1981): "[A] witness who has been previously questioned under hypnosis may not testify in a criminal proceeding concerning the subject matter adduced at the pretrial hypnotic interview." In his written report shortly after the Timms incident and before his hypnotic interview, Meyer stated that there were five persons walking to the booking room in the Hall of Justice, namely, Timms, Levos, Wolfe, Miller, and Meyer. Also, Meyer's report did not mention Timms' spitting at Levos in the hallway as the group walked to the booking room. After the hypnotic interview and at the hearing before the commission, Meyer testified that Wolfe had remained outside the Hall of Justice and therefore was not included in the group walking to the booking room. At the hearing Meyer testified further that Timms did spit at Levos. Obviously, the officer's testimony at the hearing was favorable to Levos. Timms' spitting at Levos in the hallway

was favorable to Levos as it may have been used in an attempt to establish mitigating circumstances. In any event, Levos' account of the spitting incident was corroborated in part by the testimony of Meyer. As stated in 5A C.J.S. *Appeal & Error* § 1678 at 713 (1958), the general rule is: "In accordance with the universal rule of appellate procedure that a party cannot assign as error that which is not prejudicial to him . . . it is a concomitant rule of universal application that appellant cannot complain of errors which were favorable to himself or operated in his favor." Likewise, as found in 5A C.J.S. *Appeal & Error, supra* at 715-17, "Appellant cannot complain of rulings admitting, excluding, or striking evidence, where such rulings operate in his favor or against appellee." Consequently, where evidence adduced was favorable to Levos there has been no prejudice, and Levos cannot complain about error which actually favored or benefited his case. See, *Griess v. Borchers*, 161 Neb. 217, 72 N.W.2d 820 (1955); *Mustard v. St. Paul Fire & Marine Ins. Co.*, 183 Neb. 15, 157 N.W.2d 865 (1968); *Leitelt Iron Works v. De Vries*, 369 Mich. 47, 119 N.W.2d 101 (1963). Under the circumstances Levos cannot complain about the admission of the testimony of Meyer.

Upon a review of the record in these proceedings, there is competent evidence to support the action taken by the Columbus Civil Service Commission, and, consequently, the judgment of the District Court is affirmed.

AFFIRMED.