IN RE APPEAL OF STEVE BONNETT. STEVE BONNETT, APPELLANT, V. CIVIL SERVICE COMMISSION AND CITY OF BLAIR, NEBRASKA, APPELLEES.

344 N.W.2d 657

Filed February 24, 1984. No. 83-391.

Jerold V. Fennell of Robert E. O'Connor & Associates, for appellant.

Wyman E. Nelson, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Steve Bonnett appeals the judgment of the district court for Washington County, Nebraska, upholding the decision of the civil service commission of Blair, Nebraska, regarding termination of Bonnett's employment with the Blair Police Department. We affirm.

Bonnett entered employment with the Blair Police Department approximately 8 months before the incident which resulted in Bonnett's dismissal from the police department. Around 3 a.m. on an unspecified day in the summer of 1982, Bonnett went off duty and proceeded to a fellow officer's apartment. Bonnett, still in uniform and carrying his .38-caliber service revolver, arrived at the apartment. Sometime between 3 and 5 a.m., Bonnett, who was sitting on a footstool in the apartment's main room, commenced a demonstration of "fast loading" his revolver. Seated in the room with Bonnett were the other officer and two ladies. According to Bonnett, as he viewed the revolver from the rear, the revolver's barrel was in the "12-o'clock" position. A cartridge was visible in the "1-o'clock" position in the revolver's cylinder, namely, immediately to the

right of the barrel chamber of the cylinder. Expecting the cylinder to rotate clockwise, Bonnett aimed the .38 at a concrete wall in the apartment, pulled the trigger, with the cylinder rotating counterclockwise, and fired a bullet into the concrete wall about 36 inches from the floor of the apartment.

At 5 p.m. on the same day of the incident, Bonnett discussed the matter with the assistant chief of police. The assistant chief of police was the middleman in the chain of command, with the chief of police at the top and a sergeant as Bonnett's immediate supervisor. Bonnett never filed any written report or other memorandum concerning the incident in which his service revolver was accidentally discharged in the apartment.

The Blair Police Department "rules, regulations and procedures manual" in effect at the time of the incident in the apartment contained two rules or regulations requiring written confirmation about discharge of firearms, namely: "1216 FIREARMS

. . . .

".02 Officers shall not draw or display their sidearms in any public place, except when they are to be used, or for inspection by a superior. Officers shall not "Dry Fire," clean, repair, load, or unload their firearms except on the target range. Officers shall not place or store any firearms or other weapons in police building except when the place of storage is locked. Officers firing a gun accidentally or intentionally, except on a target range, shall report the circumstances to the chief immediately and *shall file a written report of the incident within eight hours."*

. . . .

"1429 FIREARMS HANDLING RESTRICTIONS

. . . .

".06 A policeman who discharges a weapon off duty, except at a target range or during a hunting excursion, *shall file memorandum* [sic] *as soon as*

*practical after the discharge to his supervisor.''* (Emphasis supplied.)

According to Bonnett, the apartment incident was a matter of common knowledge throughout the police department, but the chief of police testified that he did not learn of the incident until January 1983. After an investigation into the incident, the chief of police discharged Bonnett from the Blair Police Department. The mayor and city council of Blair confirmed Bonnett's dismissal by the chief of police in resolution No. 1983-03, issued on January 14, 1983, that is, "NOW, THEREFORE, BE IT RESOLVED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF BLAIR, NEBRASKA, that the action of the Chief of Police in discharging from employment in the Blair Police Department Officer Steve Bonnett is hereby confirmed based upon the following: Violation of department rules and regulations in an improper discharge of a firearm, failure to properly document and report the incident."

A copy of the resolution was received by Bonnett, who requested a hearing before the civil service commission. In his opening remarks at the hearing of the civil service commission, Bonnett's attorney stated in reference to the apartment incident: "He did not intend to discharge the gun. It was merely an accident. . . . We're admitting that this incident took place." Four witnesses in addition to Bonnett were called to support Bonnett's position. Witnesses also testified for the city. Bonnett acknowledged receiving a copy of police rules and regulations, that he had put it "in my drawer" and had "read parts" of such rules and regulations, but disclaimed any knowledge of the required written report to the chief of police pursuant to § 1216.02. On the basis of the evidence presented at the hearing, the civil service commission affirmed Bonnett's dismissal from the police department.

Bonnett appealed the commission's decision to the district court. The district court found that suf-

ficient notice of the accusation had been given to Bonnett and that Bonnett's dismissal was in good faith and for cause, as required by Neb. Rev. Stat. § 19-1808 (Reissue 1977).

In his appeal Bonnett raises only one question, namely, whether the notice regarding dismissal was sufficient for due process. In particular, Bonnett claims the notice was insufficient because the written accusation did not state the date on which the incident occurred, where the incident occurred, the status of Bonnett, i.e., on or off duty at the time of the incident, the identity of his accuser, and the specific police rule or regulation violated by Bonnett.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

To satisfy the requirement of due process, a notice in proceedings before an administrative agency or tribunal, such as the civil service commission in the present case, must reasonably provide information regarding the accusation levied. See *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983); cf. *Irwin v. Board of Ed. of Sch. Dist. No. 25*, 215 Neb. 794, 340 N.W.2d 877 (1983).

Charges in administrative proceedings must be specific enough to allow a party to prepare a defense, but the charges need not be drawn with the same refinements, strictness, exactitude, and subtleties as pleadings for judicial proceedings. See, *Jenkins v. Univ. Civil Service Merit Bd.*, 106 Ill. App. 3d 215, 435 N.E.2d 804 (1982); *Buras v. Bd. of*

*Trustees of Pol. Pens. Fund*, 430 So. 2d 237 (La. App. 1983).

The modern trend in administrative pleading is to require simply that the parties be sufficiently apprised of the nature of the proceedings so that there is no unfair surprise. See *North State Tel. Co., Inc. v. Alaska Public Util. Com'n*, 522 P.2d 711 (Alaska 1974); cf. *Sabine Bank v. State Banking Bd.*, 630 S.W.2d 523 (Tex. App. 1982).

"In an administrative proceeding it is only necessary that the one proceeded against be reasonably apprised of the issues in controversy, and any such notice is adequate in the absence of a showing that a party was misled." *Cella v. United States*, 208 F.2d 783, 789 (7th Cir. 1953). See, also, *Savina Home Industries v. Secretary of Labor*, 594 F.2d 1358 (10th Cir. 1979).

The off-duty occurrence of the incident at the apartment was admitted by Bonnett and, therefore, was not an issue before the civil service commission. Admitting occurrence of the incident but questioning sufficiency of the notice regarding the date and location of such incident is a retrospective attempt to inject an issue where none existed at the hearing. To suggest the notice left some mystery about the identity of Bonnett's accuser disregards the language of resolution No. 1983-03 approving the "action of the Chief of Police in discharging" Bonnett from employment. Both Bonnett and the city called the chief of police as a witness at the hearing of the civil service commission. There was no doubt about the identity of the accuser under the circumstances. The notice did not mislead Bonnett, and no surprise is shown regarding any aspect of the incident or the identity of Bonnett's accuser. Consequently, the notice sufficiently informed Bonnett about the incident and his accuser.

With the exception of firing a weapon while hunting or on a target range, the police rules and regulations of the Blair Police Department required an of-

ficer to make a written report about firing a weapon, whether the weapon's discharge occurs on or off duty, and whether discharging a weapon is accidental or intentional. The essence of the accusation against Bonnett is failure to make a written report concerning the incident at the apartment, the accidental discharge of Bonnett's service revolver. Bonnett's attack on sufficiency of the notice by claiming that the accusation did not specify the particular police rule or regulation, i.e., §§ 1216.02 or 1429.06, is a specious argument. Either of the mentioned regulations required written confirmation about discharge of a firearm—a document which Bonnett failed to render. Bonnett was aware of the departmental regulations governing conduct of officers of the Blair Police Department. If Bonnett had not thoroughly read the departmental regulations before notice of his dismissal, after notice of dismissal Bonnett had every good reason and ample opportunity to acquaint himself with those regulations. Allowing one engaged in law enforcement to use his vincible ignorance of two departmental regulations as a defense to the alleged violation of those regulations is sophistry. Nothing indicates that the absence of specific mention of either of the applicable regulations caused prejudice to Bonnett in preparing his defense or presenting his case. If there were a question about any regulation in reference to the accusation, Bonnett could have eliminated any uncertainty on his part simply by requesting specification. Bonnett was charged with knowledge of all the rules and regulations in the police manual and cannot claim that he was misled or surprised in the reference to departmental rules and regulations under the circumstances. Cf. *State ex rel. Messner v. Milw. C. Civil S. Comm.*, 56 Wis. 2d 438, 202 N.W.2d 13 (1972). The notice sufficiently informed Bonnett concerning the rules and regulations upon which the accusation was based. Any surprise in this case occurred in the apartment, not at the hearing.

Under the circumstances the judgment of the district court is correct and is affirmed.

AFFIRMED.

BOSLAUGH, J., concurring in the result.

I concur in the judgment of the court in this case.

The review provided by Neb. Rev. Stat. § 19-1808 (Reissue 1977) is very limited. The statute provides that the appeal "shall be confined to the determination of whether or not the judgment or order of . . . the commission, was made in good faith for cause. *No appeal to such court shall be taken except upon such ground or grounds.*" (Emphasis supplied.)

The only issue raised by the appellant in this case related to the "constitutional sufficiency" of the notice served upon him. Such an issue cannot be determined in the limited appeal provided by § 19-1808, but may be determined in another proceeding in which the limitations prescribed in § 19-1808 are not applicable.

Although I do not disagree with the conclusions reached in the majority opinion, the sole issue raised by the appellant cannot be determined in an appeal under § 19-1808. If the majority opinion is correct, the limitations imposed by the Legislature in that section have become meaningless.

HASTINGS and CAPORALE, JJ., join in this concurrence.