GOLDA BOCKBRADER, APPELLANT, V. DEPARTMENT OF PUBLIC
INSTITUTIONS, STATE OF NEBRASKA, APPELLEE.
367 N.W.2d 721

Filed May 17, 1985.   No. 84-302.

Elaine A. Waggoner of Waggoner Law Office, for appellant.

Paul L. Douglas, Attorney General, and Martel J. Bundy, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

BOSLAUGH, J.

The plaintiff, Golda Bockbrader, appeals from the order of the district court which affirmed the order of the State Personnel Board approving the termination of her employment by the Department of Public Institutions (DPI) of the State of Nebraska.

The plaintiff was employed as the volunteer-recreation coordinator at the Nebraska Veterans' Home, Grand Island, Nebraska (Home). On March 18, 1980, the plaintiff's employment was terminated by Everett Phillips, the Home's administrator, for "continued inability to follow the direction

of management."

The termination of her employment was preceded by a series of complaints made against her by the Home's nursing department and a representative of the American Legion Auxiliary (Auxiliary). Specifically, on three occasions, despite requests by the nursing department, the plaintiff failed to provide volunteers for an enclosed area outside the home, which was used for recreational purposes. The plaintiff was aware that she was supposed to coordinate such activities with the nursing department, but refused to do so because she considered the fenced area like a prison camp and was sure that volunteers would not want to work within it.

Additionally, friction existed between the plaintiff and Eleanor Brown, the deputy representative from the Auxiliary to the Home. The plaintiff instructed an employee from the volunteer department not to assist the Auxiliary in turning on a bingo board. Brown complained to Phillips about the plaintiff's lack of cooperation with the Auxiliary. Phillips also received complaints from the department president of the Auxiliary that the plaintiff acted like she were the Auxiliary representative at the home, was trying to take over the Auxiliary program at the Home, and had a habit of representing herself as the representative at Auxiliary meetings.

In response to these complaints, Phillips discussed the problems with the plaintiff and issued six directives to her on July 25, 1979. They directed the plaintiff to (1) cooperate with specifically identified volunteers in the coming year; (2) cooperate with nursing programs as requested; (3) not represent the Home at veterans' meetings, and make sure the Auxiliary representative received credit for services performed at the Home; (4) give her employees written directives to cooperate in any way possible with all volunteers; (5) keep this conversation privileged; and (6) provide her three CETA workers to the nursing department on July 26, 1979, at 9:30 a.m.

When the plaintiff received a 5-percent merit pay increase in November 1979, she thought she had complied with the directives. However, beginning in January 1980, more problems arose. The plaintiff objected to Brown's receipt of free meals while at the Home as a representative of the Retired

Senior Volunteer Program (RSVP). The plaintiff's objections, which were voiced at an RSVP board meeting, embarrassed Brown. Subsequently, the plaintiff resigned from the RSVP board over the issue of meal reimbursement.

On January 21, 1980, Phillips received a request from the American Legion for the plaintiff to speak at an upcoming convention. When Phillips instructed the plaintiff to decline the invitation, several angry Legionnaires met with Phillips on January 31, 1980, to determine why the plaintiff could not speak.

On February 27, 1980, Phillips again met with the plaintiff and asked her about the RSVP incident and the Legionnaires' meeting. He also reminded her of the July directives. She claimed to know nothing of the Legionnaires' meeting, and requested a meeting with Brown. Phillips then presented the plaintiff with a written corrective action, pursuant to rule 14.12.5 of the Nebraska Personnel System Rules and Regulations (Oct. 24, 1977), for her "repeated failure to maintain satisfactory and harmonious working relations with other departments and various volunteer groups." The corrective stated that the plaintiff was working against management rather than with it. It warned of further disciplinary action if there was no evidence in the immediate future of a cooperative attitude between the plaintiff's office and the volunteer groups.

The meeting with Brown that the plaintiff had requested was held on February 28. By all accounts the meeting solved nothing, and the plaintiff antagonized Brown. The personnel manager, who attended this meeting and had been investigating complaints against the plaintiff, then recommended termination to Phillips, based on the meeting and a review of the plaintiff's performance records relating to cooperation with management.

Phillips met with the plaintiff on March 10, 1980, to discuss the results of the meeting with Brown. They also discussed her attitudes about providing volunteers in the enclosed area, which had not changed.

On March 18, 1980, Phillips terminated the plaintiff's employment. She was informed by Phillips that the termination

was based on her inability to cooperate with Brown and her inability to cooperate with management in utilizing the enclosed area.

The plaintiff then filed a grievance with the director of DPI, who affirmed the termination for violation of the same regulations referred to by Phillips in his written response to the grievance: (1) failure to comply with regulations, policies, and procedures of the Department of Personnel; (2) refusal to accept a reasonable work assignment; (3) use of undue influence to gain individual advantage; and (4) failure to maintain harmonious working relationships with the public or with other employees.

The plaintiff then appealed to Jan Pieper, the director of the Department of Personnel. Pieper, after hearing testimony, recommended reinstatement, based on management's failure to provide specific guidance as to how the plaintiff could correct her deficiencies.

The DPI then brought the matter before the State Personnel Board. A full evidentiary hearing was held on October 9 and 10, 1980, before four board members. This hearing resulted in a tie vote. On its own motion the board held a second hearing on July 16 and 17, 1981, before two new board members and one other member. This panel unanimously affirmed the termination.

The plaintiff then appealed to the district court, raising five errors which, upon hearing, were consolidated into two: (1) Whether the board's tie vote after the first hearing was a final order which deprived the board of jurisdiction to hold the second hearing, which thus deprived the plaintiff of due process; and (2) Whether the evidence on rehearing was sufficient to support the termination. The district court held that the board had acted within its jurisdiction, there had been no denial of due process, and the decision was supported by competent, material, and substantial evidence.

The plaintiff claims the district court erred in its finding of jurisdiction and substantial evidence. She also alleges other due process violations under the broad umbrella that the district court's decision is "contrary to the law." Specifically, she questions the sufficiency of her termination notice, as it did not

tell her why she was fired, and the sufficiency of the procedures used by Phillips prior to termination.

A court reviewing an order of an administrative agency to determine whether there has been due process of law must determine whether there was reasonable notice and an opportunity for a fair hearing. *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983).

The requisite notice must inform the employee of the accusation made, identify the accuser, provide a factual basis for the accusation, and afford an opportunity to present evidence concerning the accusation. *Levos, supra; Benton v. Board of Ed. of Sch. Dist. No. 17*, 219 Neb. 134, 361 N.W.2d 515 (1985).

The hearing must be before an impartial board, *Levos, supra*, and *Benton, supra*, and occur at some point before the final order becomes effective. *Chase v. Board of Trustees of Nebraska State Colleges*, 194 Neb. 688, 235 N.W.2d 223 (1975).

Here, there was substantial compliance with the notice requirements, and there can be no doubt that the plaintiff knew why she was terminated. The termination notice itself was minimal, but Phillips informed the plaintiff at the termination meeting of the specific reasons for termination: lack of cooperation with Brown and lack of cooperation in staffing the enclosed area. While no specific regulations that had been violated were listed in the termination notice, these were supplied by Phillips in his answer to the plaintiff's grievance a full month and a half before the evidentiary hearing before the Director of Personnel. Any further clarification could have been obtained by utilizing discovery procedures provided under the personnel regulations.

In a recent decision the U.S. Supreme Court discussed the due process which must be afforded a public employee who has a constitutionally protected property right in his employment and who is in danger of termination. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. ____, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), the Court held that a pretermination hearing is required to safeguard this property right. The pretermination hearing need not be elaborate and may be "something less" than a full evidentiary hearing. The Court said:

Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. See *Bell v. Burson,* 402 U.S., at 540, 91 S.Ct., at 1590.

The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See *Arnett v. Kennedy,* 416 U.S., at 170-171, 94 S.Ct., at 1652-1653 (opinion of POWELL, J.); *id.,* at 195-196, 94 S.Ct., at 1664-1665 (opinion of WHITE, J.); see also *Goss v. Lopez,* 419 U.S., at 581, 95 S.Ct., at 740. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

105 S. Ct. at 1495-96.

The personnel rules and regulations in effect at the time of the plaintiff's dismissal provided the necessary due process. (See Nebraska Personnel System Rules and Regulations (Oct. 24, 1977).) The regulations provide that dismissal is a disciplinary action. Rule 14.17.5. Upon receipt of information indicating that either corrective or disciplinary action should be taken, the appointing authority (agency head) or his designated representative must meet with the employee to verify the information. The employee must be afforded an opportunity to refute the information or present mitigating evidence. Rule 14.12.3. Based on the information and evidence, the appointing authority makes a decision and informs the employee in writing of the nature of the offense, the action being taken, and the reason for the action. Rule 14.12.6. If the action is taken by a designated representative, the agency head retains authority to

modify the representative's action. Rule 14.12.1. Generally, a dismissed employee must be given written notice of his dismissal 2 weeks prior to its effective date, or 2 weeks' pay in lieu thereof.

Applying these requirements to the case at bar, the corrective issued in February 1980 put the plaintiff on notice that disciplinary action was pending if her relationship with certain volunteer groups did not improve. At the time the corrective was issued, the plaintiff had an opportunity to refute the charge in a counseling session with Phillips and then hold a meeting with Brown, the individual at the center of the controversy. After that meeting the plaintiff discussed the results with Phillips on March 10. The plaintiff admitted the meeting with Brown accomplished nothing. When questioned about utilizing the enclosed area, the plaintiff admitted that she had not changed her mind about using it.

One week later, the plaintiff met with Phillips and received written notice of her termination for "continued inability to follow the direction of management." The reasons behind the termination were explained to her, and she received 2 weeks' pay in lieu of notice.

The plaintiff then pursued administrative and judicial review of the decision, during which three evidentiary hearings were held.

While the plaintiff may not have been afforded an opportunity to refute the charges against her on the date of the termination, the evidence is clear that from the time the corrective action was first served on her on February 27, 1980, the plaintiff has had at least two opportunities to refute the charges which were the basis of her dismissal.

In addition, she was on notice of her deficiencies from July 1979, when directives outlining the problems were given to her. She admitted to the personnel board that she believed her dismissal was triggered by her failure to follow the July 25, 1979, directives.

Since the plaintiff received adequate notice of the charges against her and had ample opportunity to refute them prior to her dismissal, the requirements of *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. \_\_\_\_, 105 S. Ct. 1487, 84 L. Ed. 2d 494

(1985), were met, and it cannot be said that she was denied due process.

Since the notice here was sufficient, this case may be distinguished from those where the dismissed employee was not afforded adequate information of the allegations against him and, therefore, was unable to defend himself at the hearing. See, *Benton v. Board of Ed. of Sch. Dist. No. 17*, 219 Neb. 134, 361 N.W.2d 515 (1985); *Irwin v. Board of Ed. of Sch. Dist. No. 25*, 215 Neb. 794, 340 N.W.2d 877 (1983).

As to the question of the personnel board's jurisdiction to rehear the appeal after a tie vote, the rule followed by some appellate courts that an equal division is a judgment of affirmance is not applicable here. See *Durant v. Essex Company*, 74 U.S. 107, 19 L. Ed. 154 (1869).

Administrative bodies which exercise judicial or quasi-judicial powers have the power to decide controversies. "The power to decide usually implies the power to reconsider." *Andrews Van Lines, Inc. v. Smith*, 187 Neb. 533, 536, 192 N.W.2d 406, 408 (1971). The power to reconsider exists until the aggrieved party files an appeal or the statutory appeal period has expired.

Here, no final decision was reached after the first personnel board hearing. The board was equally divided both as to termination and as to allowing the decision of the Director of Personnel to stand. The vote as such was ineffective to render a final decision. "An agency determination obviously cannot be final if it is not an effective determination, much less if it is no determination at all." *Chase v. Board of Trustees of Nebraska State Colleges*, 194 Neb. 688, 694, 235 N.W.2d 223, 227 (1975). Since the decision of the board was ineffective, and not final, it did not divest the board of its jurisdiction to render a final decision upon rehearing. The board rendered a final decision on October 26, 1981, and an appeal was perfected on November 4, 1981. The board retained jurisdiction over the controversy until the October decision was rendered.

There was also substantial evidence on the record for the district court to sustain the personnel board's action affirming termination.

On appeal this court's review is limited to considering

whether the agency decision was supported by substantial evidence. *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985). This standard requires the reviewing court to search the entire record and determine whether, on the evidence before the agency, it could fairly and reasonably find facts as it did. *Beatrice Manor, supra; Simonds v. Board of Examiners*, 213 Neb. 259, 329 N.W.2d 92 (1983).

Here, the record reveals the plaintiff did not follow the directives given her with respect to cooperating with the volunteer workers or providing volunteer workers in the enclosed area. She therefore violated two regulations: (1) failure to maintain harmonious working relationships with the public or employees; and (2) refusal to accept a reasonable work assignment. Rules 14.13.9, 14.13.2. The violation of either regulation was a sufficient ground for her termination. Rule 14.17.5.

With regard to providing volunteer workers for the enclosed area, three meetings were held in 1979 with the nursing department to solicit the plaintiff's help. Each time she refused, claiming that no volunteers would want to work in the area or that the area destroyed the dignity of the veterans. The nursing department finally gave up on asking for volunteers in the area, feeling that any more attempts were useless. Even when the plaintiff was directed by Phillips to provide workers, though she complied with one request her attitude toward working in the area never changed. It was the totality of the plaintiff's behavior with reference to the area, and not one specific, subsequent refusal, which caused the board to uphold her termination on this ground. The board's finding is bolstered by the fact that after the plaintiff's dismissal an adequate number of volunteers was found to work in the area.

With respect to working with the Auxiliary volunteers, the record reveals the plaintiff's attitude and behavior toward Eleanor Brown, a deputy representative, only worsened in 1979 and 1980. The plaintiff was given a specific directive to cooperate with Brown. However, the situation continued to deteriorate with reference to the RSVP meal reimbursement. A corrective was issued and a meeting set up with Brown to try and alleviate the problem. However, the plaintiff was rude to

Brown during the meeting, and nothing was accomplished. She was terminated only after Phillips received word of the meeting from the Home's director of personnel and the results of the meeting were discussed with her. The plaintiff's dissentive attitude and lack of cooperation were amply documented on the record and constituted substantial evidence for the district court to uphold her termination.

The judgment of the district court is affirmed.

AFFIRMED.