JOHN L. HAMMANN, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL
CORPORATION, ET AL., APPELLEES.
417 N.W.2d 323

Filed December 31, 1987.    No. 86-223.

James E. Schaefer of Gallup & Schaefer, for appellant.

Herbert M. Fitle, Omaha City Attorney, and Michael A. Goldberg, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

This is an appeal from the district court, which affirmed an order of the Omaha Personnel Board terminating the employment of the plaintiff-appellant, John L. Hammann, with the Omaha Police Division.

Appellant assigns as errors the finding that his conduct adversely affected the economic or efficient conduct of the business of the City of Omaha or the city's best interests and the failure to impose some time limitation when imposing disciplinary action. We affirm.

Contrary to the appellant's assertion, this is not an appeal from the decision of an administrative agency which must be reviewed de novo on the record under Neb. Rev. Stat. § 84-918 (Reissue 1981). That section is applicable only to agencies of the state. *Harnett v. City of Omaha*, 188 Neb. 449, 197 N.W.2d 375 (1972). Neb. Rev. Stat. § 84-901(1) (Reissue 1981) provides: "Agency shall mean each board, commission, department, officer, division, or other administrative office or unit *of the state government . . . .*" (Emphasis supplied.) In *Harnett*, the personnel board of the City of Omaha was *not* found to be an agency within the act, so de novo review was improper.

Instead, where it appears in an error proceeding that an administrative agency of a municipal government has acted within its jurisdiction and there is some competent evidence to sustain its findings and order, the order of the agency will be affirmed. *Matula v. City of Omaha*, 223 Neb. 421, 390 N.W.2d 500 (1986). "The review is solely upon the record made by the tribunal whose action is being reviewed, and no new facts or evidence can enter into the consideration of the court." *Harnett, supra* at 188 Neb. at 451, 197 N.W.2d at 377.

*Shepherd v. City of Omaha*, 194 Neb. 813, 235 N.W.2d 873 (1975), provides further insight with its definition of competent

evidence:

> "Competent evidence" means evidence that tends to establish the fact in issue. Or, stated otherwise, evidence that is admissible and relevant on the point in issue. Black's Law Dictionary (4th Ed.), p. 355, defines it as: "That which the very nature of the thing to be proven requires, * * *."

*Id*. at 817, 235 N.W.2d at 875. Additionally, the action of the agency must not be arbitrary and capricious. *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983). Furthermore, in reviewing the findings and decision of the agency, it is not for the Supreme Court to resolve conflicts in the evidence. Instead, credibility of witnesses and the weight to be given to testimony are for the agency or tribunal as the trier of fact, which is in a better position to evaluate evidence offered at the hearing.

Hammann was an 18-year employee of the Omaha Police Division when he was questioned at an interview with the internal security unit of the division on June 11, 1985, regarding his involvement with or usage of marijuana. Hammann had been identified in a photograph where he was seated at a table with two other individuals who had been involved in a drug conspiracy case in Iowa. Also pictured on the table were plastic bags of large quantities (in excess of 1 pound) of cannabis (marijuana) and a weighing scale.

In the interview, Hammann admitted possession, periodic use, and purchase of marijuana at various times throughout a 10- to 13-year period. The last time apparently occurred in February of 1985. Hammann also admitted contact with cocaine on at least three occasions.

Hammann was charged with violations of the police labor contract, specifically, article 6, § 1:

> (j) Commission of acts or omissions unbecoming an incumbent of the particular office or position held, which render his admonishment, reprimand, suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of business of the City or for the best interest of the City government;
>
> . . . .
>
> (q) Use of illegal controlled substance.

After a June 21, 1985, meeting with the personnel director of the City of Omaha, Hammann was suspended without pay for a 30-day period commencing June 25, 1985, and was discharged effective July 25, 1985. Hammann's appeal to the personnel board of the City of Omaha was denied by a vote of 5 to 0. The denial was affirmed by the district court for Douglas County.

The burden of proof lies with the appellant to establish error in the action or order from which the appeal has been taken. *Caniglia v. City of Omaha*, 210 Neb. 404, 315 N.W.2d 241 (1982). In *Martin v. City of St. Martinville*, 321 So. 2d 532 (La. App. 1975), the court held that the dismissal or discipline of a tenured police officer had to be done in good faith and for cause. This means that the "dismissal or disciplinary action must be reasonably necessary for the continued efficiency of the service being rendered" and that the "failure to dismiss or discipline the officer would be detrimental to the city or to the service which it is required to perform." *Id.* at 535. "Cause" has also been defined as "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Coursey v. Board Fire & Police Com'rs of Skokie*, 90 Ill. App. 2d 31, 37, 234 N.E.2d 339, 341-42 (1967). These cases were cited and similar standards were enunciated in the Nebraska case of *In re Appeal of Levos, supra*.

It was further stated in *Riley v. Board of Police Commissioners*, 147 Conn. 113, 118, 157 A.2d 590, 593 (1960), that "wide discretion must be lodged in the board in determining what conduct on the part of members of the force is injurious to the efficiency of the department."

Police Chief Robert Wadman aptly summarized the concern for corruption when police officers are involved with drugs: "[A]ny involvement in narcotics trafficking activity is a major concern because of the vulnerability that police officers have with their responsibility and the access to information." Chief Wadman noted that the photograph showed a salable quantity of narcotics as well as scales. He stressed that users do not weigh narcotics, only sellers do. He surmised that appellant's

knowledge of such a compromising photograph would cause him to "become vulnerable obviously to drug dealers using either blackmail tactics or just coercive tactics . . . ." Such is of great concern to police management.

Appellant admitted being present in the photographed scene, sitting at a table with two known narcotics dealers and bags of marijuana. Appellant also testified that he had tried cocaine on a total of three occasions, twice with cocaine obtained from arrests he had made. In his interview with the internal security unit, appellant admitted possession, periodic use, and purchase of marijuana at various times over a 10- to 13-year period. The date on the back of the photograph was August 1975. As with the dismissal of an Omaha police officer for falsification of records and reports in *Stradley v. City of Omaha*, 201 Neb. 378, 381, 267 N.W.2d 541, 543 (1978), "We are not dealing with a single impulsive act done under pressure but several separate acts performed over a period of time."

Appellant was aware that possession of less than an ounce of marijuana was a misdemeanor and that delivery of marijuana was possibly a felony, yet he failed to take appropriate action as an Omaha police officer with regard to the activity portrayed in the photographic exhibit.

Due to the obvious potential for abuse, it is clear that the facts at hand give rise to a situation of police corruption having a major impact on the activity of the city and its best interests.

Because of testimony of a former supervisor of the appellant, retired Sgt. Daryl Simmons, that he never had a basis to question the appellant's integrity, honesty, or professionalism as a police officer, the appellant suggests that the city was not injured in any fashion.

However, a nearly identical situation has recently arisen and has been decided adversely to the appellant. In *Ostwald v. City of Omaha*, 224 Neb. 530, 399 N.W.2d 783 (1987), Ostwald, a 911 operator, was discharged as a result of telephone conversations held between Ostwald and his wife concerning the purchase and use of marijuana for their personal consumption. This court ruled:

> We believe that it is clear that when an employee of the city, whose duties in part are to help apprehend persons using

marijuana, himself engages in such activity, such action does constitute an act unbecoming an incumbent of the particular position, does affect the efficient conduct of the business of the city, and is not in the best interest of the city government.

*Id.* at 532, 399 N.W.2d at 784. These words are clearly dispositive of the case at bar.

Appellant's second assignment of error refers to the provision of the police labor contract at article 6, § 9 (i.e., the 35-day rule), which provides: "Any disciplinary action must be initiated within thirty-five (35) days of the incident occasioning the disciplinary action. . . . This time limitation shall not apply whenever the disciplinary action results from or is the product of a criminal investigation." The rule has recently been addressed by this court in *Matula v. City of Omaha*, 223 Neb. 421, 390 N.W.2d 500 (1986), where disciplinary action was found to be initiated within the confines of the rule although the violations charged had occurred as early as 6 months before the petitioner-in-error was served with written notification of the investigation.

With regard to the rule above, the personnel board made the following finding: "That the existence of the above photograph and other circumstances and admissions of unlawful activity by appellant as referenced above, became known to the administration of the Omaha Police Division on or after June 6, 1985." This finding is in line with the testimony of Officer Verlin Sieh, who identified Hammann in the photo shown to him by a prosecutor. The first time Officer Sieh became aware of the picture was on the 4th or 5th of June, 1985. This was his first knowledge of any involvement of Hammann with drugs.

The facts indicate that Hammann was then given advance written notice that the misconduct charged. and the circumstances of this case were under consideration for disciplinary action. Hammann was interviewed by Lieutenant Howard of internal security on June 11, 1985. A meeting was held with the personnel director on June 21, 1985, and disciplinary action was taken on June 25, 1985.

A reasonable construction of this statute-of-limitations-type provision is that disciplinary action must be initiated within 35

days from the date that the underlying incident is brought to the attention of the proper department to commence action. As to the 35-day rule, it was stated in *Matula, supra* at 223 Neb. at 424, 390 N.W.2d at 502, that " '[c]ontracts must receive a reasonable construction so as to give effect to the intention of the parties thereto and carry out rather than defeat the purposes for which they were executed.' "

Additionally, the disciplinary action resulted from a federal narcotics investigation in Des Moines, Iowa, which uncovered the photograph of appellant, who was identified on June 4 or 5, 1985. Thus, the disciplinary action "results from or is the product of a criminal investigation" under the police labor contract, which is specifically exempted from the 35-day rule.

The judgment of the district court was correct and is affirmed.

AFFIRMED.