JEANIE VENTURA, APPELLANT AND CROSS-APPELLEE, V. STATE OF
NEBRASKA EQUAL OPPORTUNITY COMMISSION, APPELLEE AND
CROSS-APPELLANT, AND RAYMOND PINA, ALSO KNOWN AS
RAYMOND PENA, APPELLEE.

517 N.W.2d 368

Filed June 10, 1994.   Nos. S-92-950, S-93-466.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

Don Stenberg, Attorney General, Alfonza Whitaker, and Elaine A. Chapman for appellee State.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

Two appeals concerning the same cause of action are the subject of this opinion, S-92-950 (*Ventura I*) and S-93-466 (*Ventura II*). These appeals involve a housing discrimination complaint filed by Raymond Pina with the Nebraska Equal Opportunity Commission (Commission). The district court affirmed the decision of the Commission finding that Jeanie Ventura had engaged in illegal discrimination. Ventura appealed. That appeal is the subject of *Ventura I*. During the pendency of the appeal to the Nebraska Court of Appeals, Ventura filed a motion for new trial with the Commission on the

grounds of newly discovered evidence. The Commission denied the motion. Ventura filed a petition for judicial review, and the district court dismissed the motion in part for lack of jurisdiction because of the pending appeal of the underlying case. Ventura appealed. The latter appeal is the subject of *Ventura II*. Subsequently, *Ventura I* was moved to our docket, and we moved *Ventura II* as well to address the jurisdictional questions which arose from the filing of the second appeal.

## FACTS

Raymond Pina, who is Mexican-American, was searching for an apartment or duplex in Gering, Nebraska, in July 1991. He saw an advertisement in the newspaper listing the unit in question. On July 17, at approximately 9:30 a.m., he called the telephone number in the newspaper and was told that the unit was available. At approximately 10:30 a.m., after driving by the unit, Pina called the number again and spoke to Ventura. He told Ventura that he wanted the apartment and that he would like to see it. When Pina gave Ventura his name, Ventura told him the unit had already been rented.

Later that same day, Pina spoke to Deborah Surber, a Caucasian coworker, about the incident. It appeared strange to her that the unit had rented within an hour after Pina had expressed an interest in it. She agreed to inquire about the unit in order to determine whether there was any discrimination involved in Ventura's decision not to rent the unit to Pina.

At approximately 1:30 p.m. on the same day, Surber contacted Ventura for information on the unit, and she was given an appointment to see it at 2:30 p.m. After examining the unit, Surber told Ventura she would take the unit, and agreed to return by 3:30 with a deposit check. Ventura informed Surber that she needed to submit the deposit by 3:30 because shortly thereafter another prospective tenant would be examining the unit.

As Surber was leaving, Pina returned to the unit and asked Ventura to show him the unit. Ventura stated that she had rented the unit to Surber. Pina left and then returned to the unit shortly after 3:30. He attempted to explain to Ventura that Surber and her husband did not want the unit and stated that he would like

to rent the unit. Ventura did not allow Pina to see the apartment, and told him that another woman had an appointment to view it at 4 p.m.

The following day, several other individuals of Mexican-American descent called Ventura seeking to examine the unit. Rita Sabala and Ben Castinado testified that they called for information on the unit and were told the unit was still available. Castinado used Martinez as his last name when he called Ventura. They testified that after they stated their surnames to Ventura, Ventura became evasive and would not agree to a definite time when they could see the unit.

Garold Newton, a Caucasian, also called for the unit on July 18. Newton also stated his full name to Ventura. Newton testified that although Ventura stated she could not show him the unit on that day, she set an appointment on the following day for 5:30 p.m. The following day he learned that it had been rented to Charles Haggard, a Caucasian, later the prior evening.

Evidence presented at the hearing revealed that with the exception of one Hispanic that Ventura knew, the unit in question was rented only to Caucasians. In addition, the evidence also showed that the units with the highest monthly rental rates were rented to Caucasians, while the lower rental rate units were rented to people of Mexican descent. The hearing officer found that Ventura intentionally discriminated against Pina because of his national origin and that she intentionally maintained a policy of discrimination against potential renters of the residence who were of Hispanic descent. In awarding relief, the hearing officer awarded Pina $5,000 in damages for emotional distress. Pursuant to Neb. Rev. Stat. § 20-338 (Reissue 1991), the Commission issued a final order on June 19, 1992, adopting the findings of fact and conclusions of the hearing examiner. The district court affirmed the decision of the Commission.

The jurisdictional question arises from the separate appeals on the underlying case. Ventura appealed the decision of the district court to the Court of Appeals, *Ventura I*. During the pendency of this appeal, Ventura filed with the Commission a motion for new trial on the grounds of newly discovered

evidence. The Commission denied the motion, and the district court affirmed on the basis, in part, that it lacked jurisdiction because of the pending appeal of the underlying action. Ventura appeals that decision as well, *Ventura II*.

## ASSIGNMENTS OF ERROR

In *Ventura I*, Ventura asserts the district court erred in not finding that (1) the order of the Commission and the damages it awarded were contrary to law and the evidence, (2) the Commission did not establish a prima facie case of housing discrimination, (3) Ventura's reasons for not renting the unit to Pina were not pretextual, (4) the Commission erred in awarding emotional damages, (5) there had not been compliance with the notice to make election provisions under Neb. Rev. Stat. §§ 20-333(2) and 20-335 (Reissue 1991), and (6) the Commission had not complied with all statutory procedural provisions of the law of conciliation.

On cross-appeal, the Commission asserts that the district court erred in affirming the $5,000 award of compensatory damages for emotional distress, the award being too small to fully compensate Pina.

In *Ventura II*, Ventura asserts the district court erred in (1) sustaining the Commission's demurrer without giving Ventura the opportunity to amend her petition for judicial review and (2) sustaining the Commission's demurrer on the grounds that it did not have jurisdiction to hear the matter because of the pendency of the first appeal on the underlying action.

## STANDARD OF REVIEW

A judgment rendered or final order made by the district court pursuant to the Administrative Procedure Act may be reversed, vacated, or modified on appeal for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1992). An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993).

## APPLICABLE LAW

### NEBRASKA CIVIL RIGHTS ACT OF 1969
### V. NEBRASKA FAIR HOUSING ACT

Ventura raises a question of whether the appropriate law was applied by the hearing officer. The alleged discrimination occurred on July 17, 1991. At that time, the law in effect was the Nebraska Civil Rights Act of 1969, Neb. Rev. Stat. §§ 20-105 through 20-125, 48-1102, and 48-1116 (Reissue 1987 & Cum. Supp. 1990). At the time the two-part hearing took place, January 29 and February 12, 1992, the current statute addressing housing discrimination, the Nebraska Fair Housing Act, Neb. Rev. Stat. §§ 20-301 through 20-344 (Reissue 1991), was in effect. We will refer to these two acts as the old law and the new law, respectively.

The relevant substantive provisions of the old law regarding impermissible discrimination in housing remain the same. See §§ 20-107 and 20-318. The relevant procedural differences between the two statutes are the methods by which an aggrieved person may seek relief. See §§ 20-114 through 20-119 and §§ 20-326 through 20-337. Under the old law, once a determination was made by the Commission that probable cause existed to credit the allegations of the aggrieved person, and informal methods of conciliation proved fruitless, then the Commission could commence an action in the district court. Under former § 20-118, the district court would hear the case as if it were sitting on a civil case. After a hearing, if the district court found that there was discrimination, then it was authorized to provide relief as specified under § 20-118, including taking "such other action as is within the general power of the court to insure justice and carry out the purposes of [the civil rights act]."

The relevant sections of the new law created a procedure by which relief can be sought by an aggrieved person after the Commission has investigated and made a determination that a discriminatory practice has occurred. Under the new law, the Commission then issues a charge against the respondent. The aggrieved person or the respondent may elect to have the matter determined in a civil action. If no election is made, then the

respondent is provided an opportunity for a hearing before an officer appointed by the Commission. See §§ 20-333 and 20-336. If the hearing officer finds that discrimination has occurred, then he can issue an order of relief for the aggrieved party. See §§ 20-337 and 20-338.

## SUBSTANTIVE V. PROCEDURAL

At the hearing, the hearing officer used the substantive portions of the old law in assessing damages and the procedural provisions of the new law. In short, the procedural rules of the new law authorized the Commission to bring a charge of discrimination against Ventura on behalf of Pina and provide her with a hearing before a hearing officer after informal methods of conciliation had failed. See §§ 20-333 to 20-337. We find this was proper, because we have generally held that the procedures and procedural rules to be applied are those in effect on the date of the hearing and not those in effect when the act or violation is charged to have taken place. See *Durousseau v. Nebraska State Racing Commission*, 194 Neb. 288, 231 N.W.2d 566 (1975). Therefore, although Ventura was subject to the substantive portions of the old law, the newly operative law governed the procedural aspects of the case.

## COMPENSATORY DAMAGES

However, the question remains as to the propriety of the hearing officer's imposing compensatory damages upon Ventura. The hearing officer found that Ventura had discriminated against Pina. The hearing officer's order cited §§ 20-117 and 20-118 as the applicable provisions for determining the relief which should be granted. Section 20-118 stated:

Actions brought pursuant to section 20-117, shall be subject to the rules of procedure for other civil actions in the district courts . . . . In considering and determining such actions, the court shall have the authority to:

(2) Grant temporary or permanent injunctions or restraining orders or other orders which will effectuate the purposes of sections 20-105 to 20-125, 48-1102, and 48-1116;

. . . .

(7) Take such other action as is *within the general power of the court* to insure justice and carry out the purposes of sections 20-105 to 20-125, 48-1102, and 48-1116.

(Emphasis supplied.)

An administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act. *NAPE v. Game & Parks Comm.*, 220 Neb. 883, 374 N.W.2d 46 (1985). In addition, as a general rule, administrative agencies have no general judicial powers, notwithstanding that they may perform some quasi-judicial duties. *Transport Workers of America v. Transit Auth. of City of Omaha*, 205 Neb. 26, 286 N.W.2d 102 (1979). The hearing officer cited § 20-118(7) as authorizing him to award compensatory damages for Pina's emotional distress. Section 20-118(7) authorized the "district courts" to take such other action, in addition to those actions specified in the statute, "as is within the general power of the court" to take. Thus, under the old law, the district court alone was authorized to provide relief which included taking "such other action as is within the general power of the court to insure justice and carry out the purposes of [the civil rights act]." § 20-118. However, the hearing officer could not take additional action under this section, because an agency has no general judicial powers. Accordingly, his power to afford relief was limited to exercising only those remedies specifically provided by § 20-118. In issuing the order for compensatory damages for Pina's emotional distress, the hearing officer went beyond his powers. Therefore, the award for compensatory damages for $5,000 was improper. This conclusion precludes the Commission's asserted error on cross-appeal that these damages are inadequate.

## HOUSING DISCRIMINATION

### ELEMENTS

Ventura's first three assignments of error combine to assert that the evidence presented at the hearing was insufficient as a matter of law to prove that Ventura discriminated against Pina. In determining whether Pina was entitled to relief, we look to federal decisions for guidance, since the antidiscrimination acts

are patterned after federal law. See *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, 217 Neb. 289, 348 N.W.2d 846 (1984).

Ventura alleges that the Commission failed to establish a prima facie case of discrimination. One of the principal cases establishing the prima facie elements for employment discrimination cases is *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In *McDonnell Douglas Corp.*, the Court held that the plaintiff must establish a prima facie case of racial discrimination, which can be rebutted by the defendant by articulating a legitimate nondiscriminatory reason for its action. If the defendant articulates a nondiscriminatory reason for his action, then the plaintiff is given the opportunity to show that the employer's stated reason was in fact a pretext for discrimination. *Id.* Federal courts have held that the *McDonnell Douglas Corp.* test also applies in cases brought under the Fair Housing Act. See, *U.S. v. Badgett*, 976 F.2d 1176 (8th Cir. 1992); *Secretary, HUD on behalf of Herron v. Blackwell*, 908 F.2d 864 (11th Cir. 1990). Therefore, in order to establish a prima facie case of housing discrimination, the plaintiff must prove by a preponderance of the evidence (1) that he is a member of a racial minority, (2) that he applied for and was qualified to rent or purchase the housing, (3) that he was rejected, and (4) that the housing opportunity remained available. *Blackwell, supra.* In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), the Court stated that the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

The U.S. Supreme Court recently reaffirmed the holdings of *McDonnell Douglas Corp.* and *Burdine* in *St. Mary's Honor Center v. Hicks*, ____ U.S. ____, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). In *St. Mary's Honor Center v. Hicks*, an employment discrimination case, the district court found that the respondent had established a prima facie case of racial discrimination in employment by proving that (1) he was black, (2) he was qualified for the position he held, (3) he was demoted and ultimately discharged, and (4) the position remained open

and was ultimately filled by a white man. The district court also found that the reasons given by the employer petitioner for its action were not the real reasons for demoting and discharging the respondent. Nevertheless, the district court did not grant the respondent relief because it found that the respondent had failed to carry his ultimate burden of proving that respondent's race was the determining factor in the employer's decision to demote and discharge him.

On appeal, the U.S. Court of Appeals for the Eighth Circuit reversed because it found that once the plaintiff proved that the employer's proffered reasons for the actions taken against the respondent were pretextual, the respondent was entitled to judgment as a matter of law. See *Hicks v. St. Mary's Honor Center*, 970 F.2d 487 (8th Cir. 1992).

The U.S. Supreme Court reversed the Court of Appeals decision. The Court noted that the presumption established by *McDonnell Douglas Corp.* was a procedural device designed to establish an order of proof and production. The Court stated that the framework set forth in *McDonnell Douglas Corp.* and *Burdine* established an allocation of the burden of production and an order for the presentation of proof in title VII discriminatory-treatment cases and did not relieve the respondent of retaining the ultimate burden of persuading the trier of fact that the petitioner had intentionally discriminated against the respondent. See *St. Mary's Honor Center v. Hicks, supra.*

The Court held that if the defendant succeeds in carrying its burden of production, then

> the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant. To resurrect it later, after the trier of fact has determined that what was "produced" to meet the burden of production is not credible, flies in the face of our holding in *Burdine* that to rebut the presumption "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." . . . The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. . . . The defendant's "production" (whatever its persuasive effect)

having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]" because of his race . . . .

(Citations omitted.) *St. Mary's Honor Center v. Hicks*, 113 S. Ct. at 2749.

Thus, under *St. Mary's Honor Center v. Hicks*, the plaintiff is entitled to judgment only if the plaintiff persuades the trier of fact that intentional racial discrimination was the cause of the negative treatment by the defendant. Rejection of a defendant's proffered reasons does not compel a judgment for the plaintiff, since the plaintiff always retains the ultimate burden of persuasion. *Id*. Furthermore, although the trier of fact finds that the defendant's reasons for its negative treatment of the plaintiff are not legitimate, the plaintiff nevertheless retains the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id*., 113 S. Ct. at 2754.

However, the Court also noted that disbelief by the trier of fact of the defendant's reasons, coupled with the elements of a prima facie case, may be sufficient to show intentional discrimination without any additional proof. See *St. Mary's Honor Center v. Hicks, supra*.

## APPLICATION TO THIS CASE

The hearing officer found that the Commission had met the prima facie case requirements. It established that Pina was a Mexican-American, that he applied to and was qualified to rent the unit, that he was rejected from renting the Ventura unit, and that after Pina was rejected, the unit remained available. Ventura denied that she refused to show or rent the unit to Pina. She met her burden of producing a nondiscriminatory reason by stating that she would not rent the apartment to Pina after Surber saw the unit because Pina was "mean" to her, and she would not rent the apartment to someone who was mean to her.

The hearing officer found that the Commission succeeded in proving that Ventura's articulated reasons were pretexts. The

Commission introduced the testimony of various "testers." "Testers" are individuals who, "without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982). The use of tester evidence in proving housing discrimination is common and has been approved by the U.S. Supreme Court in *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979).

The tester evidence showed that Ventura told Pina the unit was rented after he gave Ventura his last name, which is Hispanic. Thereafter, Ventura told a Caucasian tester, Surber, that the unit was still available and made arrangements for her to inspect the unit. After inspecting the unit, Surber agreed to take the unit, and agreed to return by 3:30 that afternoon with a deposit check. Ventura informed Surber that she would be showing the unit to someone else shortly after 3:30 if she did not return with the deposit check by that time. Shortly after 3:30, Pina returned and asked to see the unit. Ventura refused to show him the unit and stated that another person would be viewing the apartment at 4 p.m. Ventura claimed that she did not want to show Pina the unit because he was mean to her, and she would not rent the unit to someone who was mean to her. However, there was no indication that Pina was rude to her in the initial telephone contacts with Ventura when she gave him the address to the unit and then when she informed him that the unit was no longer available upon learning his Hispanic surname.

In addition, on the following day, two other Mexican-American individuals called Ventura for information about the unit and later stated that after they provided a Hispanic last name, Ventura would not agree to a time when she could show them the apartment. In contrast, when another Caucasian, Newton, called for the unit later that same day, Ventura set an appointment for 5:30 p.m. on the following day. Newton also gave Ventura his full name. Newton did not see the unit the next day because it had been rented to another Caucasian individual the prior evening.

In addition to the tester testimony, there was other evidence to support Pina's allegations in the rental pattern practiced by Ventura. Exhibit 7 showed that the units which rented at the highest rates were occupied by Caucasians, while units with the lower rental rates were occupied by individuals with Hispanic surnames. The evidence demonstrated that Ventura refused to show or rent to Pina because of his national origin.

Ventura denied refusing to show or rent the unit to Pina because of his national origin. She stated that she would not rent the unit to Pina because he was mean to her. Ventura's statement that Pina was mean to her referred to the second time he attempted to see the unit. There was no indication that when he originally sought to look at the unit, during the 10:30 a.m. phone conversation with Ventura, he was rude to her. Therefore, Ventura could not credibly be heard to say that she refused to show or to rent the unit to Pina because he was mean to her when she first rejected his attempts to secure the unit. The Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), stated that a pretext may be found when the totality of the evidence presented leads the finder of fact to conclude that the "proffered explanation is unworthy of credence." We agree with the hearing officer, finding that Ventura's proffered reasons were not worthy of credence.

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Burdine, supra*; and the subsequent case *St. Mary's Honor Center v. Hicks*, _____ U.S. _____, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), we find that Pina successfully carried his burden of persuading the court that Ventura had intentionally discriminated against him.

## NOTICE

Ventura claims that the Commission failed to serve her with the charge and information on election for civil action, as required by § 20-333(2)(a). Determination of this issue requires a brief overview of the procedure for seeking a remedy under the Nebraska Fair Housing Act. Under § 20-326, an aggrieved person files a complaint with the Commission alleging discriminatory practice. After this complaint is filed, the

Commission must serve notice on the respondent, "identifying the alleged discriminatory housing practice and advising such respondent of the procedural rights and obligations of respondents under the act, together with a copy of the original complaint." § 20-326(1)(b)(ii). Thereafter, the Commission investigates the complaint, and if it determines that reasonable cause exists to believe that discrimination occurred, then it must issue a charge of discrimination on behalf of the aggrieved person. § 20-333. After a charge is issued by the Commission, the Commission must "cause" a copy of the charge, along with additional information specified in the statute, to be served on the respondent.

Ventura does not argue that she was not personally served with the original complaint pursuant to § 20-326. Her allegation is that she was not properly served with the charge under § 20-333 because a copy of the charge, accompanied by the required information, was sent to her attorney of record, Robert Brenner. Under Neb. Rev. Stat. § 25-534 (Reissue 1989), the Commission was authorized to serve the notice of the charge to Ventura's attorney of record. Section 25-534 states:

> Whenever in any action or proceeding, any order, motion, notice, or other document, except a summons, is required by statute or rule of the Supreme Court to be served upon or given to any party represented by an attorney whose appearance has been noted on the record . . . such service or notice may be made upon or given to such attorney, unless service upon the party himself or herself is ordered by the court.

Ventura asserts that § 25-534 is inapplicable because the issuance of the charge amounts to a summons, which is not subject to the provisions of § 25-534. We find this statement unpersuasive. Generally, a summons is an instrument used to provide notice to a party of civil proceedings and of the opportunity to appear and be heard. *State ex rel. Ill. Farmers v. Gallagher*, 811 S.W.2d 353 (Mo. 1991). It is also used as a means of acquiring jurisdiction over a party. *Id.* Section 20-333 states in relevant part:

> (2) After the commission issues a charge under this section, the commission shall cause a copy of the charge,

together with information as to how to make an election under section 20-335 and the effect of such an election, to be served:

(a) On each respondent named in the charge, together with a notice of opportunity for a hearing at a time and place specified in the notice, unless such an election is made . . . .

Although the notice requirements in § 20-333 serve a similar purpose as a summons by notifying the respondent of the pendency of a hearing, there is nothing in the statute which requires it to be served as a summons in a civil case. Where the Legislature has intended for service to be executed as a summons in civil cases, it has specifically stated so within the statutes. See Neb. Rev. Stat. §§ 48-174 and 48-190 (Reissue 1988) (upon filing a petition in workers' compensation cases, a summons shall be served upon the adverse party, as in civil cases, together with a copy of the petition); Neb. Rev. Stat. § 84-917 (Cum. Supp. 1992) (petition for judicial review under Administrative Procedure Act: "Summons shall be served . . . in the manner provided for service of a summons in a civil action"); Neb. Rev. Stat. § 83-1027 (Reissue 1987) (in mental health commitment hearings, district court required to cause a summons to be prepared and issued to sheriff, who shall "personally serve" upon the subject the summons and copy of the petition). Thus, if the Legislature had intended the notice in § 20-333 to be served as a summons in civil cases, then it would have made it clear in the statute. Therefore, the Commission's service of the charge upon Ventura's attorney of record was permissible under § 25-534, since § 20-333 did not require any particular form of service. See, also, *Ranger Division v. Bayne*, 214 Neb. 251, 333 N.W.2d 891 (1983) (substantial compliance with notice requirement where service is made upon attorney of record, and no particular form of service is prescribed by statute).

Ventura's remaining assignment of error regarding conciliation is meritless, since the record reflects that conciliation was attempted and failed.

We also do not address the Commission's cross-appeal, as the issue of damages has been disposed of.

## VENTURA II

We now address Ventura's second appeal to this court. Ventura's original appeal was based on the determination of the district court that the hearing officer's findings were proper. During the pendency of that appeal, Ventura filed with the Commission a motion for new trial based on newly discovered evidence. The hearing officer denied the motion on January 22, 1993, after finding that the "newly discovered evidence" was evidence which was in existence prior to the public hearing and that the exercise of due diligence before the public hearing would have produced the information. The order became final on February 22, 1993, as set forth in § 20-338. On March 4, Ventura filed a petition for judicial review of the denial of the motion for new trial. The Commission filed a demurrer. The petition named the Commission and Pina as respondents. On April 27, the district court dismissed the petition, finding that it had no jurisdiction over the subject matter, that there was a defect in the parties respondent, and that the petition did not state facts sufficient to constitute a cause of action.

Ventura filed a motion for new trial in the district court on May 4, 1993. The district court properly refused to consider the motion because it was improper pleading. See *Hueftle v. Northeast Tech. Community College*, 242 Neb. 685, 496 N.W.2d 506 (1993) (motion for new trial not properly filed in district court acting as an appellate court). Ventura appealed the April 27 and May 4 decisions on May 26, but addresses only the former decision in her brief. Accordingly, we address only the issues raised by the April 27 decision. See *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993) (this court will not consider assignments of error which are not discussed in the brief).

Ventura claims the district court erred in sustaining the Commission's demurrer because it did not have subject matter jurisdiction over the action because of the pendency of the other appeal, *Ventura I*. In addition, Ventura claims the district court erred in sustaining the demurrer on the grounds that there was a defect in the parties respondent and that Ventura failed to state facts sufficient to constitute a cause of action, without giving Ventura the opportunity to amend her petition for judicial

review.

A demurrer which challenges the sufficiency of the allegations is a general one. In our review of a ruling on a general demurrer, this court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

It is an abuse of discretion by the court " ' "to sustain a demurrer without leave to amend where there is a reasonable possibility that the defect can be cured by amendment, particularly in the case of an original complaint." . . .' " *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 183, 302 N.W.2d 697, 701 (1981). Accord *LaPan v. Myers, supra.*

## NEW TRIAL

Ventura claims that the pendency of the appeal of the original action did not preclude the district court from considering her motion for new trial based on newly discovered evidence. We agree. The statute authorizing a party to file a motion for new trial, Neb. Rev. Stat. § 25-1143 (Reissue 1989), requires that an application for a new trial must be made within 10 days, either within or without the term, after the verdict, report, or decision was rendered, except for the cause of newly discovered evidence which the applying party could not, with reasonable diligence, have discovered and produced at trial. When newly discovered evidence is the grounds for a motion for new trial, Neb. Rev. Stat. § 25-1145 (Reissue 1989) requires the motion to be filed within 1 year after the final judgment was rendered.

Although there is no statutory provision which gives the Commission the authority to reconsider its order, we have stated that an administrative agency's power to exercise judicial or quasi-judicial authority also implies the power to reconsider its own decision. See *Bockbrader v. Department of Insts.*, 220 Neb. 17, 367 N.W.2d 721 (1985).

The issue is whether an administrative agency may reconsider its decision after an appeal of the underlying case has been filed. In civil appeals, after an appeal to this court has been perfected, a lower court is without jurisdiction to hear a case

involving the same matter between the same parties. *Bell Fed. Credit Union v. Christianson*, 237 Neb. 519, 466 N.W.2d 546 (1991); *Zeeb v. Delicious Foods*, 231 Neb. 358, 436 N.W.2d 190 (1989). See, also, *Nuttelman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988), *cert. denied* 489 U.S 1031, 109 S. Ct. 1167, 103 L. Ed. 2d 225 (1989) (after jurisdiction has vested in the Nebraska Supreme Court, any order made by the district court is void and of no effect). This is also true for administrative agencies. In *Morris v. Wright*, 221 Neb. 837, 381 N.W.2d 139 (1986), this court held that the power of an administrative agency to reconsider its decision exists only until the aggrieved party files an appeal or the statutory appeal time has expired. Under these principles, it would appear that the Commission and the district court were precluded from hearing Ventura's motion for new trial because jurisdiction had vested in this court.

However, we have also held that under the statutes authorizing a new trial on the grounds of newly discovered evidence, if timely presented, a motion may be entertained by the district court although the cause is pending in this court for review. *Hellman v. Adler*, 60 Neb. 580, 83 N.W. 846 (1900).

> A party desiring to obtain a new trial . . . has, therefore, the right in every case to make his application within one year from the date of the judgment in the district court, and that court has authority to entertain his petition and grant the relief demanded, although the cause may be pending for review in this court.

*Id.* at 582, 83 N.W. at 847.

Other cases addressing this issue have held similarly. In *State v. Youngstrom*, 191 Neb. 112, 214 N.W.2d 27 (1974), the defendant, after perfecting his appeal to this court, had filed a motion in the trial court asking the court to vacate his sentence. On appeal, this court found that all proceedings occurring after the appeal had been perfected were void because "the authority of the District Court, after appeal to this court has been perfected, seems limited to granting a new trial on the basis of the newly discovered evidence." *Id.* at 117, 214 N.W.2d at 30.

In *Smith v. State*, 167 Neb. 492, 93 N.W.2d 499 (1958), this court addressed the question of jurisdiction of the district court

to hear a motion for new trial during the pendency of a proceeding in the Supreme Court. The defendant filed a motion for new trial on the grounds of newly discovered evidence after filing for review by a petition in error in this court. The district court found that jurisdiction to consider it was suspended during the pendency of this court's review, unless this court gave the district court permission to consider the motion. This court found that the district court had jurisdiction to hear the motion for new trial without first acquiring permission from this court to consider the motion for new trial.

There is nothing in the statutes stating or indicating that consideration shall be delayed until after the decision on review by the Supreme Court of a conviction of a criminal offense on petition in error, unless permission to hear and determine is granted by this court. No decisions have been cited or found indicating that there should be any such delay. Reason appears to indicate that the legislative intent was that the two proceedings as such should be conducted separately and independently of each other, and that such independent conduct by the district court could not be regarded as an invasion of the jurisdiction of the Supreme Court.

It is to be observed of course that a motion for new trial is directed to the trial court. . . . There is no provision for filing such a motion elsewhere. . . . At no point is the right to file or to have an original adjudication upon it related to a proceeding for review. Specifically the statute relating to the filing of a motion for new trial on the ground of newly discovered evidence . . . contains no restrictions upon the jurisdiction of that court to hear and make an adjudication on the sufficiency or merits of the motion at any time after it has been filed.

Undoubtedly in a case where there had been a conviction and a review on petition in error by the Supreme Court resulting in affirmance a motion, if filed within 3 years, would be proper. If the district court properly sustained the motion the conviction and its affirmance would be nullified and a new trial would become necessary. Reasonably therefore it may not well be

said that the exercise of this original jurisdiction of the trial court must be delayed and required to depend upon final disposition of the proceeding for review or upon consent of the reviewing court, when no such restriction of power is declared. If there are valid grounds for re-examination on the basis of newly discovered evidence to ascertain whether or not a person has been wrongfully convicted the steps provided for such re-examination should be taken timely and without undue delay.

*Id.* at 494-95, 93 N.W.2d at 500-01.

The principles set forth in *Hellman*, *Smith*, and *Youngstrom* can properly be applied in this case to permit the Commission to hear a motion for new trial based on newly discovered evidence although an appeal is pending. If a party that had appealed an administrative agency decision was obligated to wait until after the appeal had been disposed of to file a motion for new trial based on newly discovered evidence, then a situation could arise in which the party would be left without a remedy. The statute authorizing a new trial limits the time in which a motion for new trial may be made on the grounds of newly discovered evidence to 1 year. See § 25-1145. If an appeal is not disposed of until after 1 year had expired, then a party would be without any remedy regardless of the merit of his motion for new trial. Since a motion for new trial may appropriately be filed only in a trial court, the party would be precluded from seeking relief in this court as well. See, *Hueftle v. Northeast Tech. Community College*, 242 Neb. 685, 496 N.W.2d 506 (1993); *Booker v. Nebraska State Patrol*, 239 Neb. 687, 477 N.W.2d 805 (1991).

Given that the statute requires the party seeking the new trial to exercise diligence once the newly found evidence is discovered, it follows that the party should be permitted to file such a motion at the earliest date possible; otherwise, the party would face dismissal because the motion is untimely or because the party failed to show due diligence.

## PARTY RESPONDENT AND SUFFICIENCY OF FACTS

### PARTY RESPONDENT

Ventura asserts that the district court erred when it found

that there was an error in the parties respondent. Under § 84-917(2)(a), which governs proceedings for judicial review of the decision of an administrative agency, "[a]ll parties of record shall be made parties to the proceedings for review." The party of record before the hearing examiner and throughout the entire litigation has been the Commission, although acting on behalf of Pina. Pina was not a party of record because the Commission had filed the original complaint on behalf of Pina. Had Pina elected to file a civil suit on his own behalf, then he would have been a "party of record." We find support for this conclusion in § 20-340, which permits an aggrieved party to intervene as a matter of right if he elects to have the matter asserted in a civil action. However, naming Pina as a respondent, alone, would not warrant the sustaining of a demurrer because it did not affect the substantial rights of the Commission, and it could easily be remedied.

### SUFFICIENCY OF FACTS PLED

It is the facts well pleaded, not the theory of recovery or legal conclusions, which state a cause of action, and a petition is sufficient if, from the statement of facts set forth in the petition, the law entitles the plaintiff to recover. *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). Ventura's petition is insufficient because it is replete with conclusions of law and is devoid of any facts which would entitle her to relief. Although a petitioner generally is provided with the opportunity to amend the pleading where there is a reasonable possibility that the defect can be cured by amendment, the district court did not abuse its discretion in dismissing the petition for judicial review. On its face, the petition completely lacked any factual allegations which would entitle the plaintiff to relief. Therefore, the order of the district court is affirmed.

### CONCLUSION

The district court was correct in finding in *Ventura I* that Ventura had intentionally discriminated against Pina in refusing to show or rent to him. However, the Commission lacked authority to assess damages. In addition, although the district court could properly have considered Ventura's appeal

of the hearing officer's denial of the motion for new trial based on newly discovered evidence, it properly dismissed the petition because it failed to state facts sufficient to state a cause of action.

AFFIRMED IN PART, AND IN PART REVERSED.

WHITE, J., participating on briefs.