REQUESTED BY: Larry E. Sitzman, Director Department of Agriculture
You have requested an Attorney General's Opinion concerning the authority of the Nebraska Dairy Industry Board.
The Dairy Industry Development Act, Neb. Rev. Stat. Ann. §§ 2-3948 to 2-3964 (Michie 1995) (the "Act"), was created as "contingency" legislation which would allow a Nebraska appointed board to receive and disperse promotional income to qualified dairy promotion agencies in case Federal statutes currently administering this program are repealed. Federal legislation sets the dairy producer assessment on commercially used milk. A portion of the assessment is allocated to the National Dairy Promotion and Research Board, and the remaining portion is allocated through the Federal Order Promotion Agency #65 to local promotion agencies in and around Nebraska.
Should the Federal Order Advertising and Promotion Agency #65 (or PL 98-108) be repealed, rescinded, or otherwise terminated, Nebraska producers would technically lose control of this promotion money. The Act, therefore, was created to have the Nebraska Dairy Development Board (the Board) in place in the event current programs are terminated or repealed. The responsibilities of the Board to disperse funds to qualified state and regional programs for advertising, research, and nutrition education will commence at the time current control and disbursements of funds is repealed or terminated. As of this date, neither relevant Federal statute has been repealed. Thus, the Act currently grants authority to create the Board, but the Board is powerless. If the Federal statutes are repealed, the second part of the Act which grants powers to the Board will become operative on that date.
The following should answer your specific questions, assuming the remaining provisions of the Act become effective on March 31, 1999:
 1. Can the Nebraska Dairy Industry Development Board officially meet prior to March 31, 1999?
No. Neb. Rev. Stat. §§ 2-3951 to 2-3954 provide for the creation of the Board, the appointment of members of the Board, and the procedures for filling vacancies. These sections became operative on July 15, 1992. However, section 2-3955, which provides the Board meetings, is not yet operative. Thus, the Board has no statutory authority to meet.
As a state agency, the Board's authority is limited by state statute. The Nebraska Supreme Court has held that "[a]dministrative bodies . . . have only that authority specifically conferred upon them by statute or by construction necessary to achieve the purpose of the relevant act." Jolly v.State, 252 Neb. 289, 562 N.W.2d 61 (1997). See also PLPSO v.Papillion/La Vista School Dist., 252 Neb. 308, 562 N.W.2d 335
(1997); Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.,251 Neb. 852, 560 N.W.2d 436 (1997); Grand Island Latin Club v.Nebraska Liquor Control Com'n, 251 Neb. 61, 554 N.W.2d 778
(1996); CenTra, Inc. v. Chandler Ins. Co., Ltd., 248 Neb. 844,540 N.W.2d 318 (1995), cert. denied, 116 S.Ct. 1681 (1996);Chrysler Corp. v. Lee Janssen Motor Co., 248 Neb. 281,534 N.W.2d 568 (1995); and Ventura v. State Opportunity Com'n, 246 Neb. 116,517 N.W.2d 368 (1994).
Past Attorney General Opinions have also recognized this principle. See, e.g., Neb. Op. Atty. Gen. No. 92014, February 27, 1992 ("A state agency has only that power which has been given to it by the legislature"); Neb. Op. Atty. Gen. No. 91056, June 18, 1991 ("We believe it goes without saying that the Department of Roads of the State of Nebraska, which is a code agency, has only such powers as are given it by the Legislature"); Neb. Op. Atty. Gen. No. 435, July 11, 1980 ("As a statutory creation, a public power district is a mere agency of the state without any powers or authority except such as the Legislature may confer upon it"); Neb. Op. Atty. Gen. No. 231, December 22, 1977 ("[T]he Game and Parks Commission, as an agency of state government, possesses only those powers granted it by the Legislature"). Thus, until the sections granting power to the Board become operative, the Board may not officially meet or take action.
 2. Can the Board formally seat themselves, elect officers, hire administrative personnel or services, adopt rules and regulations, sign contracts with the Nebraska Department of Agriculture for services, and handle other anticipated functions such as contacting first purchasers of milk regarding the change in procedures prior to March 31, 1999?
No. Although the Board is created under the Act as of July 15, 1992, the Board's powers and duties, as included under Neb. Rev. Stat. §§ 2-3955 to 2-3963, are not operative until the relevant Federal statutes are repealed. Section 2-3964 clearly provides that:
 Sections 2-3955 to 2-3963 shall become operative on the date as of which the Dairy Production Stabilization Act of 1983, Public Law 98-108, as amended, is repealed or on the date as of which the Advertising and Promotion Program and Agency, as provided in accordance with 7 C.F.R. 1065.110, as amended, is repealed, rescinded, or otherwise terminated.
Neb. Rev. Stat. § 2-3964 (1997). Section 2-3957 specifically refers to the powers granted to the Board. Such powers listed include: contracting for administrative and audit services which are necessary for the proper operation of the Act, adopting and promulgating rules and regulations to carry out the Act, and exercising all incidental powers useful or necessary to carry out the Act. Neb. Rev. Stat. § 2-3957 (1997). However, since this section is not yet operative, the Board lacks statutory authority to take any action. Again, as referred to in the previous answer, the Board may only act within the bounds of statutory authority.
 3. Are there any limitations as to which kind of organization can be hired by the Board to provide administrative services? For instance, the American Dairy Association of Nebraska Inc., has indicated that they may be interested in supporting the Board to provide administrative services. They are also a qualified program who will be requesting promotion funding from Board.
The Act provides that the Board, when operative, may contract for administrative services which are necessary for the proper operation of the Dairy Industry Development Act. See Neb. Rev. Stat. § 2-3957. The Act does not forbid administrative contracts with organizations which also receive funding from the Board as a qualified program. Thus, such a contract appears to be proper under the Act. However, the Board does not have statutory authority to enter into such a contract until sections 2-3948 to2-3954 become operative.
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED BY:
Don Stenberg
Attorney General